Bentley, J.
This is an action in error brought to reverse the judgment of the court of common pleas upon a verdict rendered by the jury in this case in favor of Libbie B. Weihl v. The Village of Monroeville, Ohio, for injuries alleged to have been received by the plaintiff below, from falling upon a certain side-walk, upon a public street, within said village, which was at the time out of repair and dangerous, and which had been so out of repair and dangerous for some length of time, and of which condition it is charged the village officers had notice.
-A motion was made for a new trial after the rendering of a verdict by the jury m favor of the plaintiff below, and being submitted to the court, was overruled and a bill of exceptions was thereafter allowed and filed, and duly made a part of the record of the proceedings.
*691 Quite a large number of exceptions were taken to the various rulings of the court during the trial, several of which are now urged upon our attention, and certain of which seem to have been abandoned; that is, certain exceptions that appear noted in the record are not specially called to our attention. So I will simply deal with such as have been noticed by counsel, the first being on page 65, at the bottom, and also on page 66. A witness was testifying in behalf of the plaintiff as to what he had observed cf the side-walk in question, after the injury to the plaintiff below. He had testified in examination in chief, and as would appear from the reading of the record of his testimony, he went along this .«ide-walk in question the same afternoon that the plaintiff below was injured upon it. Upon cross-examination, he indicates that he did not go down there at that time, but that it was sometime during the next day, the day after the injury, and he asserts in his cross-examination that he did not state that he was there the afternoon of the injury, and did not intend to so state, thus indicating that perhaps the testimony he intended to give had been mistaken or misapprehended. At the close of that matter, this occurred: Question put to him: “Now, you say it was the next day after; it wasn’t the same day?” Answer: “No sir, I never said it was the same day.” Defendant’s counsel: “I ask the court to instruct the jury that they are not to consider the testimony of the witness as to the condition of the sidewalk the next day after the injury occurred.” Court: “The testimony is competent.” An exception was noted.
It is true that the condition or situation of an object, soon after it has borne some part in a material controversy, may be given in evidence, — a description of it, as found shortly after the circumstance happened, is competent; however, there comes a time when it would be toe remote to have any proper bearing. There might be an intervening circumstance also, or inter vening circumstances which would indicate that it was incompetent and immaterial. In this case, there was no direct testimony that the walk remained in the same position at the place in question from the time of the injury until the next day when this man passed along. But, taldng into consideration the circumstances, — the description of the walk as it appeared to various witnesses at the time of the accident, and afterwards when this man saw it, we are unable to conclude that this was error prejudicial to the defendant below. It might, or might not have any great bearing, owing to the circumstances, the situation, and the *692 time intervening, etc. There being no indication of a change in the side-walk at that place, the inference might be drawn that nothing ha'd been done there after the accident. We are unable to say that the court of common pleas was in absolute error in ruling that the testimony was competent.
A non-prufessional witness was allowed to testify as to the health of the plaintiff below' at. a certain period, and objection was made to that, but it was overruled and exception was taken. Under the rules of law regarding such matters, as laid down in two cases in this state, we think it is not incompetent for a person to speak of the health of another, —that'is, in that general way. Of course, it might not be competent for a non-expert, or non-professional witness to attempt to go into detail and determine the technical disease with which a person was afflicted; but upon the general matter of his health, as to whether a person appears sick or not, we think the ordinary witness may be allowed to speak. So that exception is not allowed.
At the close of the testimony m behalf of the plaintiff below, a moti.on was made to take the case from the jury, because the testimony showed, as it was claimed by the defendant below', that the plaintiff had as much knowledge of the situation of that walk, — of its being out of repair and in dangerous condition, — had the same means of knowledge that the village had, and that the plaintiff should be held to the same rule, and that therefore, as a matter of law, evidence for her ought not to be held to make a case against the village. It should be a very clear, and a very strong case where a motion of that kind is allowed. We think the testimony in this case does not present such a situation as would have warranted the court or common pleas in allowing that motion, and to refuse it was not error.
Objection was made to certain testimony offered by the plaintiff in rebuttal. The defendant below in this case had substantially entered a general denial in °its answer to the claim of the plaintiff below and had put in issue the fact of her being injured, the extent of the injury, the occasion of the injury,and the means by which the supposed injury was inflicted, and the amount of damages suffered etc., and also set up affirmatively that if the plaintiff below was injured, it was owing to her own negligence.
In the course of the trial, the defendant below sought to how, in answer to the plaintiff’s testimony showing that she had been badly injured on this occasion, and had been confined to her lióme a long while by reason of her injuries com *693 plained of, and had uterine diffieulites, — I say the defendant below, in answer to such testimony, sought to show two things or matters that might be viewed under two aspects: The defendant below was claiming all the while that she was not injured in the manner that she complains of; the village also sought to show that she had, in fact, had the difficulties that she complained of as resulting from this injury, long before that, and had been treated on account of them and was, in fact, an invalid and unhealthy in this respect, before the happening of this injury at all. The village had called Doctort Callen who had testified to things tending strongly to show, if his testimony was true, that this claim of the village was correct; at least, that there was some basis for it. The witness Callen spoke by deposition which had been taken sometime before the trial. In the course of the deposition, the Doctor testified to being called by her, or for her, in the year 1889, I think, — this injury having occurred in 1892; that he had treated her for uterine difficulties,and that substantially like symptoms then prevailed that she claimed to have prevailed after the infliction of this injury.
Quite a considerable testimony was given by Doctor Callen respecting this matter, — regarding his treatment of her.
On cross-examination it was sought to affect this testimony, and the doctor was inquired of as to whether he had ever treated her prior to this injury more than once, or on more than one occasion, and he said he had not. Then inquiries were made of him as to whether or not the difficuHy that he had treated her for at that time was not a lung difficulty, and not an uterine difficulty at all, and the doctor denied that in general terms. He denied that he had treated her for that, and denied that that was what ailed her at the time, and in general terms said that he had ever said so at any time. But he was not inquired of in cross-examination at that time, or at any time, as to his having made such a statement at any particular time or place, or to any particular person. But the questions were simply general, whether he had ever said so at any time or nlace. Therefore, under the ordinary rule as usually observed, it may be said that the foundation had not been laid to contradict him as to such statements bv proof of statements by him made to individuals, conflicting with the testimony that he was then giving by deposition.
Nevertheless, upon the trial, various witnesses were called, or two or three, at least, were called, to testify as to when *694 Dr. Callen had told the witnesses respectively, or said in their hearing regarding this matter; that is, testimony was given indicating that the doctor had said in the presence of various individuals, that this girl, on the occasion when he was treating her, had lung fever, and that he treated her for lung fever etc., — statements which, if he made them, would tend to show that the testimony he was now giving by deposition was not true, or might not be true; at least, conflicted with it. Objection was made to all of this testimony, and the court overruled each objection, and the testimony was-allowed to go to the jury. It is claimed now by the plaintiff in error, that this was substantially prejudicial error for which the judgment of the court of common pleas ought to be reversed.
On the other hand, the counsel for the defendant in error insist that the testimony, as it was given, was competent, not because it was a mere contradiction of the witness Callen, but because these alleged statements by him were expressions connected with acts of his respecting the girl’s sickness and in treating her, explanatory of those acts, and therefore, under the general rule, became part of what is called the res gestae, and that therefore, they might be given because the acts themselves were proper to be given.
I will state in general, that from the testimony given by these various witnesses, as to what Dr. Callen said, it does not appear that the statements were made in connection with any particular act that the doctor was doing at the time; even if that would render them competent. The statements that Dr. Callen said so, are general, and while it might be gathered that the remarks were ' made during the general time when he was in attendance upon this lady as her physician, yet none of them appear to have been in connection with his dealing out medicine, or giving directions about the dealing out of any medicine for her, or at the very time he was making an examination of her. The simple statement is that on one occasion he said she had lung fever. The claim here is that he said that in her presence, indicating perhaps that it; was when he was there at the house, and possibly, on the occasion when he may have observed her sufficiently to make a certain examination, enough to determine what was probably the trouble with her.' But there is not one of these questions that isparticularly connected with any particular act of. the doctor, aud many of these statements may have been made, not at the house at all, and not in immediate connection with any talk regardng her treat *695 ment; in fact, we are impressed, from the appearance of the record, that counsel were not careful in their examination, to show that these statements were made in connection with seme particular act, and that, perhaps, there was not then in the mind of the counsel the particular reasons for urging the testimony that is now urged. Neither would it appear that it must have been from the understanding that these were a part of the res gestae, that the court overruled the objections and allowed - the testimony; but it simply stands in the manner that I have indicated, that the witness whose deposition was taken, without being cross-examined as to the particular facts, as to the particular statements that he may have made inconsistent with his then testimony, was contradicted by evidence showing that he had made statements in conflict with his testimony. This is in conflict with the general rule of law. The question is, whether it should be regarded as sufficiently prejudicial to over-throw this verdict and the judgment founded upon it. While certain rules of evidence are accepted as being in a sort of general way acknowledged,' though perhaps not' very definitely fixed by adjudication in this state, our Supreme Court on quite a number of occasions has dealt specifically with this very question, and I will call attention first to the case of King v. Wicks in the 20, Ohio, p. 87. The syllabus reads:
“Before a witness can be contradicted by proving statements out of court at variance with his testimony, he must be first inquired of, upon cross-examination, as to such statements, and the time, place and person involved in the supposed contradiction.”
.Judge Ranney, delivering the opinion in that case, on page 89, says this:
“The leading case in England was that of the Queen, reported in 2 Broderik & Bingham 814, Lord Abott, C. J., delivered the unanimous opinion of the judges, holding that evidence to contradict or impeach a witness by proving that he had made different statements out of court, could not be received until the witness was first ask«d, upon cross-examination, whether or not he had said or declared that which was intended to be proved. But the counsel for the plaintiff in error is mistaken in supposing that the doctrine rests alone or mainly upon this decision. It has been fol-owed in England by the case of Angus v. Smith (and quite *696 a number of oases oited in the opinion which I will now take time to read.)
Judge Ranney proceeds: “And is the clear and undeniable rule of the English courts at this day.”
Then follows a long citation of authorities. Then Judge Ranney proceeds: “It is believed tobe the rule in every state in the Union where the question has been raised,except Massachusetts and Maine. It is also the doctrine laid down in the most approved elementary books. Mr. Greenleaf, in his work on Evidence, after stating that the credit of a witness may be impeached by proof of statements out of court contrary to what he has testified at the trial, adds: ‘Before th’s can be done, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place and person involved in the supposed contradiction. It is not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story; because it may frequently happen that, upon the general question, he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said.’”
And so the opinion proceeds in that line. Again, in 15 Ohio St.,p. 1, the second proposition of the syllabus states the rule as it has been laid down, as I have already stated.
A very extended opinion was delivered in that case. On page 10, of the court’s opinion, this is said regarding the Queen’s case arising in England:
“And one of the questions submitted to the twelve judges in the Queen’s case was, whether, when the alleged impeaching matter was discovered after the witness had been examined, it might not be given in evidence without calling back the witness? The answer delivered by Chief Justice Abbott was, that the only effect of a subsequent discovery, would be to allow' the witness to be called back for further cross-examination, if still within reach. And they were all of opinion, that, according to the usage and practice of the courts below, and according to law as administered in those courts, the proposed proof could not be adduced without a previous cross-examination of the witness as.to the matter thereof. ”
The court say further, on page 12 of the opinion:
“The rule has frequently been applied to depositions, also, to the case where it. was proposed to impeach the testimony contained therein by showing that the witness, subsequently to his examination, had made statements inconsistent with *697 his testimony,or said that what he had sworn to was false. ”
The same authorities are cited under that statement, and the court proceeds:
“In Kimball v. Davis, the court say: ‘The declarations of witness! s whose testimony"has been taken under a comission, made subsequent to the taking of the testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible in evidencce, if objected to. The only way for a party to avail himself of such declarations, is to sue out a second commission. Such evidence is always inadmissible until the witness, whose testimony is sought to be impeached, has been examined upon the point, and his attention particularly directed to the circumstances so as to furnish him an opportunity for explanation or exculpation. ’
The opinion of the court in this case was delivered by Chief Justice Nelson; the same judge who decided Losee v. Loses, cited by plaintiff in error, and before referred to. The decision was affirmed in the court of errors, Chancellor Walworth delivering the leading opinion.
“We are aware that the application of the rule to depositions has, in some cases, been denied, or applied with various modifications (citing certain authorities.) But a ma- ' jority of the court are of opinion, that the weight of authority, as well as the principle upon which the rule is founded, requires the application of the rule to the present case; and that the district court did not err in overruling the proposed evidence. ”
It will be seen there that in cases of depositions, such declarations might be given in. evidence, if they were made after the deposition of the witness had been taken; and it was strongly urged and it will be seen that that afforded a sort of equitable circumstance that it might be supposed ought to be taken into consideration. The witness’s deposition may have been taken at a distant place, and it might be exceedingly inconvenient to recall him for cross-examination, and yet. even such a case, the court held does not vary the rule.
Now, in this case, even that ground for admitting such testimony does not appear. For all that appears in the record, all of these various statements of admission by Dr. Callen, may have been made, and were made, in fact, long before his deposition was taken, and for anything that appears,the plaintiff and her counsel may have been fully aware of that at the time of the cross-examination of the doctor himself.
Dr. Callen’s testimony was regarded as a very material matter in this case,a matter which we can easily surmise, and *698 from the appearance of the record, was largely commented upon by counsel. It was material in two aspects of the case; one was in determining the amount which the jury ought to award the plaintiff for damages, because, if the whole injury had been inflicted by the accident that was c.omplamed of in her petition, certain damages might have been awarded; but. if they but augmented an old trouble, or brought about a recurrence of an old disease; if she was not entirely cf sound health in these respects before, this would bear upon the question as to the amount of damages, not, of course, to determine that she was not injured by this recurrence, but it was a matter that should be considered in determining the amount. And then again the testimony may have had a bearing upon some of the more general issues of the case; for instance, the plaintiff was claiming and asserting, not only in her petition, but by her testimony before the jury, and by the witnesses called in her behalf, that until this time she was sound and healthy in respect to the ailment that she complamed.of after the injury. She was a witness m the case, and that was her position before the jury, and while what occurred,might or might not have been recognized by the jury as influencing their belief in her testimony, yet, as a matter of law, these contradictory statements of the witness Callen, were not competent for the jury to consider. It might possibly have had in the minds of some cf the jurors quite an effect upon her general position and general statements under oath.
So, if this was erroneous, as we think without question it was, we are unable to see why it should not be' regarded as prejudicial. It might have been prejudicial. The chances are that it had more or less bearing. While we can well see that the testimony of Dr. Callen, if he had made these other statements that are attributed to him, would naturally excite in the counsel appearing for the plaintiff a desire to shake his testimony, and all that, yet there still remains the ordinary and orderly way by which that should be accomplished, and that being departed from in this case, we think there was error, manifest and prejudicial.
In regard to the objection that was made on page 418, that question is of no moment now; but I might say that that was a discretionary matter that we should not regard as error.
We had occasion in a case that came up in our court at Toledo, to look into the question'as to whether a physician’s remarks as to the nature of an injury, are to be considered a part of the res gestae. A woman had been injured there upon the side-walk on cne of the streets. Her knee had been *699 injured,and the dootor was called and examined it. I think the doctor had died before the case was presented to the court; at least, his testimony was not in the record, but witnesses were called and testimony given as to what the doctor had said when he had examined, on the very occasion when he examined the knee. We considered that very carefully because it was one of the principal matters in controversy at the time. I have not before me, neither can I recollect definitely the authorities cited, but we found authorities bearing directly upon it, and I think a very strong and decisive case ,was in Massachusetts, in which it was held that such statements of the physician wer§ incompetent, and the result of our investigation in that case was that it was prejudicial error,and we reversed the judgment, it seems to me, wholly upon that ground.
Where the principal question is about 'the action of the doctor in giving the medicine, etc., what he may say at the time he is giving the medicine, might, in certain inquiries, be of great importance; for instance, some question might come up as to the propriety of his giving the medicine or administering the remedy that he did, or doing the things that he did, or as to the state of mind he was in at the time. It might well be said that there are many occasions, when what the doctor said in reference to the administering of remedies, was of the res gestae. But here, the principal fact to be proven was the actual state of the woman’s health of body in these particulars; that was the main and material fact. That the doctor said anything about it, is of no particular moment. That is not the primary fact. The administering of any particular remedy is not the primary fact. But .the actual situation of the woman is capable of being proven.
If, in such case, the doctor testified that she was in a certain condition, the fact that he gave certain remedies which, ;according to the general learning of the profession, would not at all be applicable to that disease which he claimed she had, or if the doctor had made expressions, stating what his •treatment had been, or stating what the condition of the woman had heen, throwing doubt upon his present testimony, that would all be material, of course, and proper to be given, when the proper foundations are laid for it. And in certain cases, some of these statements might be a part of the res -gestae, but not here.
The next exception that was argued is on page 481, regarding the giving of certain requests prior to the argument to •the jury. This request was preferred by the plaintiff to the ^icourt with the request that it be given prior to the argument to the jury, and reads as follows:
*700 “It was the legal duty of the village of Monroeville to keep the side-walks in said village m repair, so as to be in a reasonably safe condition for pedestrians or persons walking upon said sidewalks, both by night and by day; and a failure or neglect to perforin that duty renders the defendant liable for all damage directly resulting from such failure.”
The first part of that proposition is correct; that is, it is the duty cf the village to keep its sidewalks in repair; but this is added: “The failure or neglect to perform that duty renders the defendant liable for all damages directly resulting from such failure.” That, in a certain sense, is true; but, if given, it is to be applied to this particular case, and care must be taken about giving generally correct principles lu particular cases. This might be supported by argument that a failure or neglect to perform that duty rendered the defendant liable for injuries directly resulting from such failure even in cases where contributory negligence is alleged, because it might be argued that in case it resulted from negligence of the plaintiff,or that the negligence of the plaintiff materially contributed to the injury, it cannot strictly be said to have directly resulted from the fault of the village; that is, to have resulted wholly from that; but, at the same time, each distinct proposition ought to have within it, its own elements of safety. But while other distinct propositions following it, may take out of it any Ruing or improper sentiment that there may be in it, yet it is always better to have each charge full-robed in itself.
Following this was the second request, given probably at the same time, closing with these words:
“Your verdict should be for the plaintiff, unless the plaintiff was herself guilty of a want of ordinary care in passing over the said walk in question.”
Now, if these things were presented alone, we would not have consented to reverse the judgment for any error in that first proposition, because we think, so far as it might be said to be at all incomplete or inadequate in expressing the whole law upon the subject, sufficient follows immediately after i't, so that we should not suppose that the jury were misled to the prejudice of the defendant below; and yet, I call attention to it to indicate that the first request might be subject to criticism in not excluding certain things from it.
The defendant also asked the court to say to the jury that “The burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that she was, at the time she fell upon the side-walk, exercising ordinary care.”
This is contrary to the general rule; but it is claimed here *701 that in this particular case, it was correct,' because tne counsel claimed that from the testimony of the plaintiff herself, and of her witnesses, a case has arisen where there is a suggestion or a presumption of her want of care, and that therefore, it was a case where the burden of proof would be shifted upon her to show that she was in the exercise of due care.
But the trouble with this is, that the court was asked, as a matter of law, to assume what the jury should find in this particular, and to say that it was actually, as a matter of law, a case for the application of this rule regarding the shifting of the burden of proof. We think the court would not have been warranted in doing that, and its rejection of that was not error.
The sixth request of the defendant below is:
“That if the jury shall find that the plaintiff had had equal opportunity with the village authorities to know or ascertain the condition of the side-walk at the place where she fell, it will be their duty to hold her to the exercise of the same degree of care to avoid injury as the [defendant is bound to exercise, that is, ordinary care; and if by the exercise of ordinary care, the plaintiff could have easily bypassing along the north side of the street, or if by the exercise of such care, she could have passed along the walk where she fell and avoided falling, the verdict should be for the defendant. ”
That request, if given, would have been an assumption by the court of common pleas that it was her duty to have avoided this walk when she came to it, if she had such knowledge, or was to be charged with such knowledge, .that if she could have avoided it with ordinary care, she should have avoided it; that if she could have avoided it when she came to it, by the exercise of ordinary care, she ought to haev done it.
This instruction was properly refused, we think.
The seventh request following this, reads:
“If the jury shall find that the side-walk at the place where the plaintiff fell was out of repair and unsafe or dangerous, and so appeared to persons of ordinary intelligence, it was tne duty of the plaintiff, when passing along on the occasion when she fell,to exercise ordinary care to avoid injury, and the burden of proof is upon her to show by a preponderance of the evidence, that she exercised such care.”
Contrary to the sixth and the second requests of the defendant below, this did not involve the court of common pleas in the assumption that a case had arisen when the burden of proof had shifted upon the plaintiff below, but it sub *702 mitted that matter'to the jury, and it rested upon one hypothesis as given in this request, that if the jury should find that, the burden would be shifted upon her.
Now, we think that the idea manifest in that,and what the jury would have understood was, that if any ordinary person walking along there, would have seen that this was unsafe and dangerous to go upon, and if the jury should find that it was open, apparent and patent that that was so, and that notwithstanding that, the plaintiff did go along there and was injured, then the time had come when the burden was shifted upon her to show some excuse for her going there, notwithstanding this apparent danger and difficulty.
We have studied that with care, and it seems to us that that embodies the true rule governing in a case of that kind; that it may be well said as a matter of law, that when those circumstances appear, there does arise a suggestion or presumption, as the Supreme Court puts it in various ways,such as is spoken of in the case m the 28 Ohio St. and 35 Ohio St., the presumption or suggestion of the plaintiff’s negligence, which would devolve upon her the burden of excusing herself. There may be various ways by which she might excuse herself, of course; but if that appear alone, just this circumstance, it would seem manifest that she would be guitlv of contributory negligence, just the same as a person would be who was about to cross a railway track when the train was coming in full sight and it was apparent to anybody and everybody that the train was liable to over-take him at the crossing, and that the person was of ordinary intelligence, with good faculties and eye-sight, etc.
There would arise, under such circumstances, an implication, a presumption, that the plaintiff was guilty of negligence in attempting to cross under circumstances of that kind, and if there was any excuse for him, his attention being attracted, or anything of the kind excusing him, the proof ought to be made manifest by him or her, and we think the rejection of the seventh request was error.
I might say in this connection, that that standing alone, if it were not that testimony which we think erroneous was allov'ed to go to the jury, we probably would not have found that sufficiently prejudicial in this par icular case to have warranted a reversal. Butv'e think it is erroneous.
“If the plaintiff knew' the dangerous character of the side-walk, or if in the exercise of ordinary care1 she might have known it,then she was guilty of contributory negligence and she cannot recover in this action, even though the defendant was in fault and negligent.”
C.P.& L. W. Wickam,and E. J.Huston,for Plaintiff in Error.
Stewart & Rowley, and Andrews Brothers for Defendant in Error.
This was the eleventh request by the defendant below for instruction to the jury, and was rejected. We think this does net, -with sufficient care, state the rule of law as applicable to an occasion of this kind-; but it would seem to embody the idea that the plaintiff was just as much bound to know of the defective condition of the walk as was the village officers, which, we think, is not true. It is not only the duty of the village officers to keep the walks in repair, but to exercise some vigilance in finding out whether they were not out of repair. It was their duty to keep them in repair, and if they were so generally out of repair that- their attention was attracted to it, they owed some duty of inspection and ascertainment which the plaintiff below did not. Then again, there is this form of expression which is generally alopted in the record in this case, and perhaps in mosteases; but it seems to us, at least, that it is improper to use it in such an action. I refer to the word “might, ” — “if, by the exercise of reasonable diligence the party ‘might’have discovered” so and so. That may be used in many.cases, and’ perhaps is; but it seems to us the meaning is not exactly the same as it would be if the expression was, “if, by the exercise of reasonable diligence, he “would” have discovered or “should”have discovered. He“might”have discovered, by the use of reasonable diligence, or “might’’not have discovered by the execrise of the same diligence. The question in such a case is, if he had exercised reasonable diligence, would he have discovered; would it have resulted,as a fact,with sufficient certainty that this condition would have been ascertained or noticed.
At any rate, we think it was proper for the court to reject the eleventh request,as was done.
Several paragraphs or sentences of the charge of tne court were excepted to and appear noted upon the margin; but we think in this case to hold as fatal the errors which are said to exist, or the criticisms that are urged against them; would indicate a too rigid requirement; it would be subjecting the charge to too close a eriti-' cism, hypercriticism almost,- to say that it embodied erroneous propositions such as would probably mislead the jury. We think the court did not err in the respects mentioned. But for the reasons that I have already stated, errors that I have pointed out, the judgment will be reversed, the verdict set aside and the cause remanded to the court of common pleas for a new trial.